**United States District Court**
For the Northern District of California

1

2                IN THE UNITED STATES DISTRICT COURT

3

4            FOR THE NORTHERN DISTRICT OF CALIFORNIA

5                                       No. C 09-2093 CW
VICTOR AIUTO, et al.,

6                                       ORDER GRANTING IN
          Plaintiffs,                   PART DEFENDANTS'
7                                       MOTION FOR JUDGMENT
     v.                                 ON THE PLEADINGS AND
8                                       DENYING DEFENDANTS'
SAN FRANCISCO'S MAYOR'S OFFICE OF       ALTERNATIVE MOTION
9  HOUSING, et al.,                     TO ABSTAIN
                                        (Docket No. 18)
10         Defendants.
   _____/

11

12        Plaintiffs Victor Aiuto, et al., allege that provisions of

13   San Francisco's Below Market Rate Condominium Conversion Program

14   constitute an uncompensated regulatory taking of their property and

15   deprive them of their rights under the United States and California

16   constitutions.  Plaintiffs also maintain that Defendants San

17   Francisco's Mayor's Office of Housing (MOH), et al., have

18   administered the Program in a manner that violates their

19   constitutional rights.  Defendants move for judgment on the

20   pleadings or, in the alternative, for the Court to abstain from

21   proceeding on Plaintiffs' federal claims.  Plaintiffs oppose the

22   motions.  The Court GRANTS in part Defendants' Motion for Judgment

23   on the Pleadings.  Defendants' alternative motion to abstain is

24   DENIED.

25                            BACKGROUND

26        Plaintiffs own condominium units that are designated "Below

27   Market Rate" (BMR) units under the Below Market Rate Condominium

28   Conversion Program.  The BMR Program was created to expand

United States District Court
For the Northern District of California

"opportunities for homeownership while preserving and expanding the supply of low- and moderate-income housing." Defendants' Request for Judicial Notice (RJN),[1] Ex. 1 § 1(a). From 1979 to 1988, property owners who converted apartments to condominiums were required to designate at least ten percent of the new housing stock as BMR units. Renters already residing in BMR units were given the right of first refusal to purchase the converted condominiums; senior citizen renters who decided not to purchase their units were given the option to enter into a lifetime lease. Under the Program, those who chose to purchase a BMR condominium generally paid a below-market price for the unit. In exchange, the Program restricted the sale and rental of the unit to ensure that it would remain available for purchase or rent by preferred groups, including low- to moderate-income households.

Plaintiffs allege that some owners "had no idea they owned a BMR unit" and, as a result, were not aware of these restrictions. First Am. Compl. (FAC) ¶ 10. Other owners, Plaintiffs aver, were "duped, tricked and actively misled about the rules" of the program and "unwittingly purchased or inherited" the restricted BMR units. FAC ¶ 10. Plaintiffs claim that, beginning in the 1990s, some owners were deceived by an affidavit developed by the MOH, which purportedly explained the Program's restrictions. Plaintiffs assert that the MOH did not consistently require purchasers to

---

[1] Defendants ask the Court to take judicial notice of several documents, including a copy of Ordinance Number 320-08. Plaintiffs oppose Defendants' request but do not contest the accuracy of Exhibit 1, which contains a copy of Ordinance Number 320-08. The Court grants Defendants' Request for Judicial Notice as to Exhibit 1 because it is not subject to reasonable dispute. Fed. R. Evid. 201.

2

1   review and sign the affidavit.

2        Plaintiffs assert that, in the late 1980s, there were

3   approximately 1,100 BMR units in the program; currently, there are

4   approximately 550.  Plaintiffs account for the difference by

5   asserting that some units "have been released from the program or

6   'escaped' the program and have been sold and re-sold at market

7   value."  FAC ¶ 10.

8        Plaintiffs claim that, in 2008, Defendants MOH, Mayor Gavin

9   Newsom and the Board of Supervisors sought to reform the BMR

10  Program following complaints that it was mismanaged.  These efforts

11  resulted in Ordinance Number 320-08, enacted in December, 2008,

12  which revised the Program's provisions and amended San Francisco's

13  Subdivision Code.

14       Plaintiffs assert that Ordinance 320-08 imposes restrictions

15  on their property that deprive them "of their constitutional and

16  civil rights."  FAC ¶¶ 14 and 16.  For instance, they maintain

17  that, prior to the enactment of Ordinance 320-08, owners of BMR

18  units were entitled to have their units "automatically released

19  from resale restrictions and rights of first refusal" if they owned

20  their unit for over twenty years.[2]  FAC ¶ 13.  Under Ordinance 320-

21  08, only owners who purchased or acquired their unit before

22  December 1, 1992 can obtain relief from the restrictions of the BMR

23  Program, and those owners can do so only

24          if they enter into an agreement with the City to pay a
            fee adjusted for income level and number of
25          bedrooms . . . , or 50% of the difference between the BMR
            Resale Price and the Fair Market Value at the time of
26          payment, as defined herein, whichever is less.  The fee
            may be paid immediately upon execution of the Agreement

27  _____

28       [2] Plaintiffs present no legal support for this claim.

3

United States District Court
For the Northern District of California

> or as a City lien, recorded through a note and deed of trust in favor of the City against the property, with a simple interest of 3%. . . . Upon payment of the fee or recordation of a lien in favor of the City, a release of the restrictions under the Program will be recorded against the property.

S.F., Cal., Subdivision Code div. 1, art. 5, § 1344(i)(a).  The fee varies, from $150,000 to $500,000.  Id.  Owners who purchased or acquired their BMR unit prior to the January, 2009 effective date of Ordinance 320-08 can opt to

> receive a one-time increase in the base resale price of their unit.  In return, the owner agrees to be governed by the provisions of this ordinance applicable to "Post-Legislation" owners.

S.F., Cal., Subdivision Code div. 1, art. 5, § 1344(i)(b).  Owners who are eligible to proceed under either or both of these options must elect to do so within twenty-four months after the effective date of Ordinance 320-08.

In addition to challenging the constitutionality of Ordinance 320-08, Plaintiffs complain that the MOH, which is charged with administering the BMR Program, is inadequately staffed and uses "unwritten or non-existent policies" that are enforced "unequally and arbitrarily."  FAC ¶ 17.  In particular, Plaintiffs cite the MOH's "Implementation Procedures" for Ordinance 320-08, which they maintain are "convoluted, ambiguous and unintelligible."  FAC ¶ 18.

Based on these allegations, Plaintiffs assert various claims for relief.  They claim that Ordinance 320-08 constitutes an uncompensated regulatory taking of their property, in violation of the United States and California constitutions, and that it is unconstitutional because it violates their due process and equal protection rights.  Plaintiffs also assert a claim under 42 U.S.C. § 1983, alleging that the manner in which Defendants have

4

administered the Program violates their constitutional rights.
Plaintiffs also ask the Court to invalidate Ordinance 320-08, on
the basis that it is preempted by the Costa-Hawkins Rental Housing
Act, Cal. Civ. Code §§ 1954.50-1954.535.  Finally, Plaintiffs seek
declaratory relief, appointment of a receiver of the MOH and
injunctive relief against the continued operation of the BMR
Program.

LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides,
"After the pleadings are closed but within such time as not to
delay the trial, any party may move for judgment on the pleadings."
Judgment on the pleadings is proper when the moving party clearly
establishes on the face of the pleadings that no material issue of
fact remains to be resolved and that it is entitled to judgment as
a matter of law.  <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.,
Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1990).

DISCUSSION

I.   Justiciability of Plaintiffs' Federal Takings Claims

Defendants assert that Plaintiffs lack standing to bring their
takings claims and that, even if Plaintiffs had standing, these
claims are not ripe for review.

A.   Standing

Article III limits the jurisdiction of the federal courts to
"cases" and "controversies."  In order to satisfy the "case or
controversy" requirement, a plaintiff must have standing to bring
an action by showing that: "(1) he or she has suffered an injury in
fact that is concrete and particularized, and actual or imminent;
(2) the injury is fairly traceable to the challenged conduct; and

United States District Court
For the Northern District of California

5

(3) the injury is likely to be redressed by a favorable court decision." Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008). To plead an actual injury in cases involving constitutional challenges, a plaintiff must "have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" Guggenheim v. City of Goleta, 582 F.3d 996, 1005 (9th Cir. 2009) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

Defendants assert that Plaintiffs do not plead an injury-in-fact. Citing Carson Harbor Village Ltd. v. City of Carson, 37 F.3d 468 (9th Cir. 1994), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc), Defendants argue that Plaintiffs acquired their units after the BMR Program was adopted in 1979 and therefore do not have standing to assert their facial takings claim. In Carson Harbor Village, the Ninth Circuit held that a plaintiff mobile home park owner, which had acquired burdened property after a municipality enacted an allegedly unconstitutional ordinance, lacked standing to assert a facial takings claim. Id. at 475-77; see also Equity Lifestyle Props., Inc. v. County of San Luis Obispo, 548 F.3d 1184, 1193 (9th Cir. 2008) (holding that a plaintiff's facial takings claim failed "for lack of standing because the injury is treated as having occurred to the previous landowner"). The court stated, "In a facial taking, the harm is singular and discrete, occurring only at the time the statute is enacted." Carson Harbor Vill., 37 F.3d at 476 (emphasis in original). Thus, a "landowner who purchased land

United States District Court
For the Northern District of California

after an alleged taking cannot avail himself of the Just
Compensation Clause because he has suffered no injury." Id.

Defendants are correct that Plaintiffs lack standing to assert
a facial takings claim regarding any restriction existing at the
time they acquired their property.  However, Plaintiffs have
standing to raise such a challenge against any new restriction that
Ordinance 320-08 may have imposed.  Defendants assert that
Ordinance 320-08 "merely clarifies" existing restrictions and, as a
result, does not cause an injury-in-fact.  Reply at 3.  However,
Ordinance 320-08 does add to San Francisco's Subdivision Code a new
section 1344, which, among other things, prescribes the above-
mentioned options available to BMR owners who acquired their
property before the Ordinance's effective date.  Plaintiffs
challenge the provisions of section 1344 as, among other things,
exacting an uncompensated taking.

Accordingly, Plaintiffs have standing to assert a facial
takings challenge to any additional restriction imposed on their
property by Ordinance 320-08.  They cannot, however, state claims
based on restrictions existing at the time they acquired their
property.

B.   Ripeness

Defendants assert that Plaintiffs' facial and as-applied
federal takings claims are not ripe for review.  In Williamson
County Regional Planning Commission v. Hamilton Bank of Johnson
City, 473 U.S. 172 (1985), the Supreme Court defined when takings
claims are ripe.  In federal court, "a takings claim is not ripe
until the property owner has attempted to obtain just compensation
for the loss of his or her property through the procedures provided

by the state for obtaining such compensation and been denied." Guggenheim, 582 F.3d at 1006 (citing Williamson County, 473 U.S. at 195).  An additional requirement is imposed on as-applied challenges: "the property owner must have received a 'final decision' from the appropriate regulatory entity as to how the challenged law will be applied to the property at issue." Guggenheim, 582 F.3d at 1006 (citing Williamson County, 473 U.S. at 192-93).

Plaintiffs do not claim that they have been denied redress in state court.  Citing Guggenheim, they nevertheless argue that the Court can and should deem their claims ripe because the requirements provided by Williamson County are only prudential, not jurisdictional, in nature.  Guggenheim, 582 F.3d at 1008 ("[T]he Williamson requirements are merely prudential requirements.")  In Guggenheim, the Ninth Circuit held the plaintiffs' takings claims were ripe, even though they did not pursue a formal inverse condemnation action in state court.  Id. at 1010-11.  The court found two reasons why it was "'not prudent'" to apply Williamson County's requirements.  Id. at 1011 (quoting Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1013 (1992)).  First, the defendant city waived its claim that the plaintiffs' case was not ripe; the city did not timely raise the issue before the district court or on appeal.  Guggenheim, 582 F.3d at 1011.  Second, the court concluded that the plaintiffs had "substantially satisfied the Williamson requirements."  Id. at 1012.  Litigation on the plaintiffs' claims spanned "three full rounds at the trial level, including one in state court and two in federal court."  Id. at 1004.  In the state court proceedings, the plaintiffs "litigated and settled several

8

state law issues relevant to the alleged taking with the City, including issues necessary to establish the timeliness of the takings claim." Id. at 1012. The court concluded that there was "no doubt that they have . . . unsuccessfully attempted to obtain just compensation through procedures by the State." Id. Moreover, there was "sufficient evidence in the record to determine whether the regulation goes too far." Id. (citation and internal quotation and editing marks omitted).

Neither factor cited by the Guggenheim court is present here. Defendants have timely asserted that Plaintiffs' claims are not ripe. Further, Plaintiffs have not sought redress through any state or local procedures.[3] Unlike the Guggenheim plaintiffs, they have not resolved any matters before a state court. Nor is there any record before the Court to illuminate whether the regulation exacts an unconstitutional taking without just compensation.

Plaintiffs also cite other cases that adjudicated takings claims on the merits, even though the Williamson County requirements were not met. In McClung v. City of Sumner, the Ninth Circuit did not address the Williamson County requirements and assumed the plaintiffs' takings claim was ripe. 548 F.3d 1219, 1224 (9th Cir. 2008). There, as in Guggenheim, the plaintiffs had litigated their dispute with the defendant city for several years

---

[3] Plaintiffs plead, without factual support, that they "have exhausted all remedies afforded by state or local law to obtain relief from the requirements of Ordinance No. 320-08" and that any further recourse to state or local remedies "would be futile." FAC ¶ 19. However, they neither allege in their FAC nor argue in their opposition that they have sought just compensation through any state procedure, such as an inverse condemnation action, and been denied. The Court "need not accept baseless allegations as proof of futility." Equity Lifestyles Props., 548 F.3d at 1191.

United States District Court
For the Northern District of California

in state court.  Id. at 1223.  After the plaintiffs amended their complaint to add a takings claim, the defendant removed the case to federal court.  Id.  In deciding that the takings claim was ripe, the court stated, "The McClungs installed the storm pipe over ten years ago, resulting in a clearly defined and concrete dispute." Id. at 1224.  Here, Plaintiffs' dispute is not similarly developed. Although they assert that they have lost a right to be automatically released from the program, they do not aver that they tried to exercise such a right, only to be denied.  Nor do Plaintiffs indicate how the provisions of Ordinance 320-08 reduce the value of their already restricted properties.

Plaintiffs contend that the Court must find their claims ripe because, otherwise, they will not be able to "seek redress of their injuries before they are whipsawed by this unconstitutional statute in December 2010."  Opp'n at 15.  They appear to refer to the requirement that an owner seeking to remove a BMR unit from the Program must choose one of the above-mentioned options within "24 months from the effective date of" Ordinance 320-08.  S.F., Cal., Subdivision Code div. 1, art. 5, § 1344(i).  This argument does not persuade the Court to cast aside the Williamson County requirements.  If Plaintiffs were to seek redress in state court, nothing precludes them from moving that court to enjoin preliminarily any provision that could cause them irreparable harm. Notably, Plaintiffs could have filed their claims in state court in the first instance and avoided the potential delay of which they now complain.

The Court declines to waive the prudential requirements of Williamson County and concludes that Plaintiffs' takings claims are

United States District Court

For the Northern District of California

not ripe for review.  Although there are cases in which courts have decided the merits of takings claims despite a property owner's failure to seek just compensation through state and local procedures, Plaintiffs have not established that their case justifies such an exception.  Their takings claims are dismissed without prejudice to refiling in state court.

II.  Equal Protection Claims

Plaintiffs claim that Ordinance 320-08 violates their rights under the Equal Protection Clause of the Fourteenth Amendment, arguing that they are treated differently than "other BMR unit owners who were released from the [Program] or escaped from the [Program] without financial or other penalty or requirement."  FAC ¶ 24.  Defendants assert that Plaintiffs are not members of a suspect class and that they do not claim a violation of a fundamental right.  As a result, Defendants maintain, Plaintiffs' equal protection claim fails because Ordinance 320-08 is rationally related to a legitimate government interest.

Unless a classification warrants heightened review because it categorizes on the basis of an inherently suspect characteristic or jeopardizes a fundamental right, the Equal Protection Clause requires only that the classification rationally further a legitimate government interest.  Nordinger v. Hahn, 505 U.S. 1, 10 (1992).  A court "will not overturn a statute that does not burden a suspect class or a fundamental interest unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that" the only conclusion is "that the legislature's actions were irrational."  Pennell v. City of San Jose, 485 U.S. 1, 14 (1988)

United States District Court
For the Northern District of California

11

(quoting <u>Vance v. Bradley</u>, 440 U.S. 93, 97 (1979)) (internal quotation and editing marks omitted).

Plaintiffs do not allege that they are members of a suspect class.  Nor do they assert that Ordinance 320-08 burdens a fundamental right.  Thus, Defendants are correct that Ordinance 320-08 must be upheld if the classification it creates is rationally related to a legitimate government interest.

Plaintiffs admit that Defendants acted in pursuit of a legitimate government interest.  Concerning Ordinance 320-08, the FAC states:

> Plaintiffs do not doubt that the City and MOH were attempting to address a legitimate governmental interest that is of genuine concern to its constituents and that is the City's need to provide affordable housing to its residents.  However, plaintiffs vigorously dispute the effectiveness, reasonableness, validity, constitutionality and legality of Ordinance No. 320-08 as well as its application to plaintiffs . . . .

FAC ¶ 17.  Plaintiffs' FAC lacks any allegation that Ordinance 320-08 contains a classification that is not rationally related to this legitimate government interest.  Instead, they maintain that Ordinance 320-08 was poorly conceived and is ineffective.  However, as the Ninth Circuit has stated, "under equal protection rational basis review, it is not for [courts] 'to judge the wisdom, fairness, or logic' of the choices made." <u>Kahawaiolaa v. Norton</u>, 386 F.3d 1271, 1283 (9th Cir. 2004) (quoting <u>Heller v. Doe</u>, 509 U.S. 312, 319 (1993)).  Thus, because Plaintiffs do not show that Ordinance 320-08 is irrational, their equal protection challenge fails.[4]  Plaintiffs' as-applied equal protection claim is dismissed

---

[4] Even if Plaintiffs did not plead that Ordinance 320-08
(continued...)

as not ripe for review; they have not plead facts to show how the Ordinance has been applied to them.

III. Due Process Claims

Plaintiffs claim that "Ordinance No. 320-08 as written and as applied violates the substantive and procedural due process rights of plaintiffs." FAC ¶ 21. They claim that Ordinance 320-08 "retroactively deprives" them of their constitutional rights. FAC ¶ 21. Defendants assert that, as based on these allegations, Plaintiffs' due process claims fail as a matter of law.

A.   Substantive Due Process

Plaintiffs do not plead clearly how Ordinance 320-08 violates their substantive due process rights. They state that Ordinance 320-08 "compels them to release otherwise valid legal claims against defendants if plaintiffs choose to buy their way out of the broken and unlawful [Program]. In some cases, plaintiffs have no right to even buy out of the broken and unconstitutional program."[5] FAC ¶ 22.

When a plaintiff challenges economic legislation on substantive due process grounds, courts afford "great deference to the judgment of the legislature." Levald, Inc. v. City of Palm

_____

[4](...continued)
serves a legitimate government interest, as discussed below, numerous reasons support the premise that Ordinance 320-08 rationally serves such an interest.

[5] To the extent that this allegation re-asserts Plaintiffs' unsuccessful takings claim, their substantive due process claim fails. See Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1054 (9th Cir. 2004) (concluding that a substantive due process claim failed "because 'the alleged violation is addressed by the explicit textual provisions of the Fifth Amendment Takings Clause'") (quoting Madison v. Graham, 316 F.3d 867, 870-71 (9th Cir. 2002)).

United States District Court
For the Northern District of California

*Desert*, 998 F.2d 680, 690 (9th Cir. 1993).  "'Ordinances survive a substantive due process challenge if they were designed to accomplish an objective within the government's police power, and if a rational relationship existed between the provisions and purpose of the ordinances.'"  *Id.* (quoting *Boone v. Redev. Agency of San Jose*, 841 F.2d 886, 892 (9th Cir. 1988)) (editing marks omitted).

Defendants assert that the City and County enacted Ordinance 320-08 to clarify and update the BMR Program, which itself was adopted to expand "opportunities for homeownership while preserving and expanding the supply of low- and moderate-income housing." RJN, Ex. 1 § 1(a).  Concerning the "release fee" complained of by Plaintiffs, Ordinance 320-08 states,

> Many owners have testified in hearings on this legislation that they were unaware of the permanent nature of the resale restriction on BMR Units.  The Board finds as a policy matter that, regardless of the fact that all BMR Unit owners were given notice of the restrictions on their Units through the recorded Subdivision Map, owners who purchased on or after December 1, 1992 were given additional, specific notice of the permanency of the restrictions and those who purchased "pre-affidavit" were not given this additional notice.  For those who were not given additional notice, the Board finds as a matter of policy and equity, that these "pre-affidavit owners" should be given the option to permanently exit the Program under a shared equity model.  The City's share of the equity will be used to create affordable housing opportunities.

RJN, Ex. 1 § 1(e).

Plaintiffs do not allege or argue that the provisions of Ordinance 320-08 lack a rational relationship with its purpose.  As Plaintiffs state, Mayor Newsom and the Board of Supervisors likely enacted Ordinance 320-08 to address problems with the BMR Program. Owners complained that they were not aware of the Program's

14

United States District Court
For the Northern District of California

permanent restrictions and, in response, Ordinance 320-08 offers an
option through which owners can seek relief.  Although this option
requires payment of a fee, Plaintiffs do not allege that the fee
itself or its intended use is irrational.  Indeed, legislators
could have imposed the fee for two legitimate purposes: (1) to
dissuade owners from removing their properties from the BMR
Program, thus reducing the availability of housing intended for
purchase by low- to moderate-income households; and (2) if the fee
did not dissuade owners from doing so, to provide a fund that, as
Ordinance 320-08 states, "will be used to create affordable housing
opportunities," RJN, Ex. 1 § 1(e).  Plaintiffs also complain that
if owners choose to exit the program, they must waive any legal
claim against the City and County concerning the Program.  However,
requiring owners to waive such claims rationally serves the purpose
of reducing litigation against the City.  Plaintiffs offer no
reason for the Court to conclude that either the fee or any other
provision of Ordinance 320-08 lacks a rational relationship to
increasing the stock of affordable housing in San Francisco.

Accordingly, the Court concludes that Plaintiffs' facial
substantive due process challenge fails as a matter of law.
Although they assert an as-applied substantive due process claim,
Plaintiffs do not allege that Defendants have applied the fee or
any other provision of Ordinance 320-08 in a particular case; thus,
such an as-applied claim is dismissed as not ripe for review.

B.   Procedural Due Process

Plaintiffs' procedural due process challenge, like their
substantive due process claim, is not clear.  Defendants assert
that their actions have not deprived Plaintiffs of their procedural

15

due process rights because the City and County enacted Ordinance 320-08 through the ordinary legislative process. "Generally, if the 'action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law.'" Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 969 (9th Cir. 2003) (quoting Halverson v. Skagit County, 42 F.3d 1257, 1260 (9th Cir. 1995)). "'[G]overnmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individualized notice and hearing; general notice as provided by law is sufficient.'" Hotel & Motel Ass'n of Oakland, 344 F.3d at 969 (quoting Halverson, 42 F.3d at 1261).

Plaintiffs have not alleged that Defendants enacted Ordinance 320-08 through a defective legislative process; nor have they argued that Ordinance 320-08 is not a law of general applicability, or that it is directed at "one or a few" property owners, Hotel & Motel Ass'n of Oakland, 344 F.3d at 969. Thus, to the extent that Plaintiffs complain that the procedure by which Defendants enacted Ordinance 320-08 deprived them of due process, their procedural due process claim fails as a matter of law. Plaintiffs have not alleged that Defendants have applied Ordinance 320-08 in a manner that deprives them of their procedural due process rights. Accordingly, Plaintiffs' as-applied procedural due process challenge is not ripe for review.

IV.  Mismanagement Claims under 42 U.S.C. § 1983

Plaintiffs plead that Defendants' mismanagement of the Program deprives them of rights under the Fifth and Fourteenth Amendments

16

of the United States Constitution.  The Court understands

Plaintiffs to allege that Defendants' mismanagement violated their

rights to substantive and procedural due process and equal

protection.  As explained below, Plaintiffs fail to state § 1983

claims for violations of these rights.  The Court therefore

dismisses these claims with leave to amend.[6]

A.   Substantive Due Process

"To state a substantive due process claim, the plaintiff must

show as a threshold matter that a state actor deprived it of a

constitutionally protected life, liberty or property interest."

Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008) (citing

Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509

F.3d 1020, 1026 (9th Cir. 2007)).  If this element is met, "the

'irreducible minimum' of a substantive due process claim

challenging land use action is failure to advance any legitimate

governmental purpose."  Shanks, 540 F.3d at 1088 (quoting North

Pacifica LLC v. City of Pacifica, 526 F.3d 478, 484 (9th Cir.

2008)).  To show that executive action is "arbitrary in the

constitutional sense," a plaintiff must demonstrate "an abuse of

power lacking any reasonable justification in the service of a

_____

[6] As noted above, Defendants move in the alternative for the
Court to abstain, pursuant to Railroad Commission of Texas v.
Pullman Co., 312 U.S. 496 (1941), from deciding Plaintiffs' federal
claims.  However, Defendants' arguments in support of their motion
for abstention address Plaintiffs' challenges to Ordinance 320-08,
not Plaintiffs' § 1983 claims.  Because the Court dismisses
Plaintiffs' challenges to Ordinance 320-08 on other grounds,
Defendants' alternative motion to abstain from deciding those
claims is denied as moot.  However, neither the pleadings nor
Defendants offer any reason for the Court to abstain from deciding
the § 1983 claims.  Accordingly, to the extent that Defendants ask
the Court to abstain from deciding these claims, their request is
denied.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

legitimate governmental objective." <u>Shanks</u>, 540 F.3d at 1088

(quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998)).

Plaintiffs have not identified action taken by Defendants in managing the BMR Program that deprives them of a property interest. Plaintiffs make conclusory allegations that Defendants' actions have been arbitrary, but they do not point to any specific conduct.[7]  Even if Plaintiffs identified conduct, they would need to meet the "excessively high burden" to establish that Defendants acted arbitrarily.  <u>Shanks</u>, 540 F.3d at 1088 (citing <u>Matsuda v. City & County of Honolulu</u>, 512 F.3d 1148, 1156 (9th Cir. 2008)). Plaintiffs' unadorned allegations of poor administration and gross mismanagement do not satisfy this standard.  If Plaintiffs intend to seek liability based on Defendants' alleged negligence in administering the BMR Program, their claims would fail.  Section 1983 liability cannot be predicated on a state actor's mere negligence.  <u>See</u> <u>Lewis</u>, 523 U.S. at 849 (stating that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process") (citing <u>Daniels v. Williams</u>, 474 U.S. 327, 327 (1986)).

Accordingly, the Court dismisses Plaintiffs' § 1983 substantive due process claims with leave to amend.  Plaintiffs must plead, with factual support, action by Defendants, other than enactment of Ordinance 320-08, that deprived them of a constitutionally protected property interest and that the action complained of was not taken in pursuit of a legitimate governmental

---

[7] To the extent that Plaintiffs complain that Defendants' enactment of Ordinance 320-08 violated their substantive due process rights, their § 1983 claim fails for the reasons stated above.

1    objective.

2        B.    Procedural Due Process

3        "To obtain relief on a procedural due process claim, the

4    plaintiff must establish the existence of '(1) a liberty or

5    property interest protected by the Constitution; (2) a deprivation

6    of the interest by the government; and (3) lack of process.'"

7    Shanks, 540 F.3d at 1090 (quoting Portman v. County of Santa Clara,

8    995 F.2d 898, 904 (9th Cir. 1993)) (editing marks omitted).

9        Plaintiffs do not plead how Defendants' alleged mismanagement

10   of the BMR Program deprived them of a cognizable property interest.

11   Further, Plaintiffs appear to allege that Defendants acted

12   negligently; this allegation does not support a procedural due

13   process claim.  See Davidson v. Cannon, 474 U.S. 344, 348 (1986)

14   (stating that the protections of procedural due process are not

15   triggered by lack of due care).

16       Even if Plaintiffs alleged that Defendants intended to deprive

17   Plaintiffs of a property interest without due process, still more

18   is required.  Generally, "due process of law requires notice and an

19   opportunity for some kind of hearing prior to the deprivation of a

20   significant property interest." Halverson, 42 F.3d at 1260

21   (citation and editing marks omitted).  Even if a pre-deprivation

22   hearing is not offered, in some cases, if a "meaningful

23   post-deprivation remedy exists for an alleged deprivation of

24   property, then that post-deprivation remedy is sufficient to

25   satisfy the requirements of due process." Sorrels v. McKee, 290

26   F.3d 965, 972 (9th Cir. 2002) (citation omitted); see also Kildare

27   v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003) ("A procedural due

28   process violation under § 1983 is not complete 'when the

19

United States District Court
For the Northern District of California

deprivation occurs; it is not complete unless and until the State fails to provide due process.'") (quoting <u>Zinermon v. Burch</u>, 494 U.S. 113, 125-26 (1990)).  Plaintiffs do not allege that they were not provided sufficient notice of some action Defendants planned to take or that they were deprived of the right to be heard before or after such an action was taken.

Accordingly, the Court dismisses with leave to amend Plaintiffs' § 1983 claim that Defendants have violated their procedural due process rights by mismanaging the BMR Program.

C.   Equal Protection

Plaintiffs do not allege that they are members of a suspect class or that Defendants are burdening a fundamental right.  Thus, if Defendants treat Plaintiffs differently from similarly situated individuals, Defendants' conduct would survive constitutional scrutiny if it "bears some fair relationship to a legitimate public purpose."  <u>Hoffman v. United States</u>, 767 F.2d 1431, 1436 (9th Cir. 1985) (citation omitted).

Plaintiffs have not adequately plead that Defendants acted unlawfully.  They provide an insufficient, conclusory allegation that the MOH somehow alters the BMR Program "without regard to whether any or all of the individuals in this class of BMR owners is treated equally under the law."  FAC ¶ 15.  Plaintiffs also allege that Defendants have implemented Ordinance 320-08 in such a convoluted manner that BMR owners must be warned to retain legal counsel before making decisions concerning their property. Plaintiffs contend that this "denies equal protection of the law to

20

**United States District Court**
For the Northern District of California

those unable to afford legal counsel . . . ."[8]   FAC ¶ 18.   However, Plaintiffs do not plead any facts to describe the irrationality of Defendants' implementation procedures.

Accordingly, the Court dismisses with leave to amend Plaintiffs' § 1983 equal protection claim based on Defendants' mismanagement of the BMR Program.   Plaintiffs must provide factual allegations of Defendants' alleged misconduct.   Unless Plaintiffs aver that they are part of a class warranting heightened scrutiny or that Defendants are burdening a fundamental right, Plaintiffs must plead how Defendants' actions do not rationally relate to a legitimate governmental interest.

D.   Statute of Limitations

Defendants argue that Plaintiffs' § 1983 claims are time-barred.   The statute of limitations for § 1983 claims borrows from the most analogous state statute of limitations; in California, the personal injury statute of limitations of two years applies.   The Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 701 n.3 (9th Cir. 2009).

Plaintiffs do not plead specific dates on which Defendants' actions caused them harm, but assert that their injury is ongoing. Thus, as Defendants concede, the statute of limitations does not bar Plaintiffs' claims to the extent that they complain of conduct that occurred after May 13, 2007, two years before the date that Plaintiffs filed their action.   Accordingly, if Plaintiffs amend

---

[8] If Plaintiffs intend to suggest that Defendants deny equal protection to persons who lack financial resources, this would not elevate the Court's scrutiny of Defendants' actions.   See NAACP v. Jones, 131 F.3d 1317, 1321 (9th Cir. 1997) ("Wealth is not a suspect category in Equal Protection jurisprudence.") (citing Harris v. McRae, 448 U.S. 297, 322-23 (1980)).

21

their § 1983 claims, they may complain of conduct that took place after May 13, 2007.

V.   Preemption by Costa-Hawkins Rental Housing Act

Plaintiffs allege that the Costa-Hawkins Rental Housing Act, Cal. Civ. Code §§ 1954.50-1954.535, preempts Ordinance 320-08.  In particular, they state, "Said Ordinance purports to set aside and/or restrict the rental of units which are separately alienable and or constitute a subdivided interest and/or control the rental prices of said units or interests, in direct violation of Costa-Hawkins, to wit, in violation of Civil Code section 1954.52(a)(3)(A)."  FAC ¶ 40.

Plaintiffs are correct that the Court can exercise supplemental jurisdiction over their state law preemption claim. See generally 28 U.S.C. § 1367.  However, the exercise of such jurisdiction is discretionary.  See 28 U.S.C. § 1367(c).

In Ventura Mobilehome Community Owners Association, the plaintiff argued that a section of California's Civil Code preempted a municipal ordinance governing rent control.  371 F.3d at 1055.  The district court dismissed the plaintiff's federal claims.  Id.  Pursuant to its supplemental jurisdiction, the district court dismissed the plaintiff's preemption claim with prejudice.  Id.  The Ninth Circuit concluded that the lower court erred by retaining supplemental jurisdiction over the preemption claim, stating, "Given the 'important, unsettled, and policy-laden issues of California law' involved, 'the appropriate forum for addressing the state law claims is clearly the state court.'"  Id. (quoting Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1181 n.28 (9th Cir. 2003)).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Because Plaintiffs' challenges to Ordinance 320-08 either fail
2    as a matter of law or are not ripe for review, the Court declines
3    to exercise jurisdiction over their preemption claim.  Defendants
4    assert, and Plaintiffs do not dispute, that the Costa-Hawkins
5    preemption claim against Ordinance 320-08 and the BMR Program is
6    novel.  As noted above, Plaintiffs must assert their takings claims
7    before a California court.  In litigating those claims, Plaintiffs
8    may ask the state court to invalidate Ordinance 320-08 based on
9    preemption by Costa-Hawkins.

10   VI.  Declaratory Relief

11   Plaintiffs seek a declaration that the manner in which
12   Defendants administer the BMR Program violates their constitutional
13   rights.  However, as noted above, they do not adequately state
14   § 1983 claims against Defendants.  Accordingly, because they fail
15   to establish a case or controversy warranting declaratory relief,
16   this claim is dismissed with leave to amend.

17   VII. Appointment of a Receiver and Injunctive Relief

18   In their FAC, Plaintiffs appear to ask the Court to appoint a
19   receiver for the MOH and to enjoin enforcement of the BMR Program
20   for the pendency of their action.  They maintain that a receiver is
21   required "for the purpose of preserving the property and/or rights
22   of plaintiffs."  FAC ¶ 46; see also Cal. Code of Civ. Proc.
23   § 564(b)(9) (providing that a receiver may be necessary in "all
24   other cases where necessary to preserve the property or rights of
25   any party").  If Plaintiffs seek such preliminary relief, they must
26   make their request through a noticed motion, not through their FAC.
27   Plaintiffs style these requests as causes of action, even
28   though they are forms of relief for their substantive claims.

United States District Court
For the Northern District of California

Thus, these "claims" are construed as requests for relief based on Plaintiffs' § 1983 claims.  Because the Court dismisses Plaintiffs' § 1983 claims with leave to amend, their requests for an appointment of a receiver and for injunctive relief are likewise dismissed.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part Defendants' Motion for Judgment on the Pleadings.  (Docket No. 18.) Plaintiffs' takings claims addressed to Ordinance 320-08 are dismissed without prejudice to refiling in state court. Plaintiffs' facial equal protection and due process challenges to Ordinance 320-08 fail as a matter of law; their as-applied equal protection and due process challenges to Ordinance 320-08 are not ripe for review.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' claim that the Costa-Hawkins Act preempts Ordinance 320-08.  The Court DENIES Defendants' alternative motion for the Court to abstain from deciding Plaintiffs' federal claims.

Plaintiffs' § 1983 claims addressed to the mismanagement of the BMR Program are dismissed with leave to amend to cure the deficiencies noted above.  Plaintiffs may file an amended complaint within fourteen days from the date of this order.  If Plaintiffs do so, Defendants may file a motion to dismiss three weeks thereafter, with Plaintiffs' opposition due two weeks following and Defendants' reply due one week after that.  Alternatively, Plaintiffs may assert their § 1983 claims against Defendants in state court, along with their takings claims and challenges to Ordinance 320-08.  If Plaintiffs do not file an amended complaint as allowed in this

24

Order, their § 1983 claims will be dismissed without prejudice.  If
the case has not been dismissed, a case management conference will
be held on July 6, 2010 at 2:00 p.m.

     IT IS SO ORDERED.

Dated: April 16, 2010

                            CLAUDIA WILKEN
                            United States District Judge

**United States District Court**
For the Northern District of California